IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Case No. CV-01-TMP-1614-S |
| ) | |
| FIVE (5) FIREARMS AND ) | |
| ASSORTED AMMUNITION, ) | |
| ) | |
| Defendant. ) | |

FILED 03 DEC -3 PM 1:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC - 3 2003

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came before the court for a non-jury trial on the Government's *in rem* complaint for forfeiture and the claim of Robert A. Rudnick ("Rudnick" or "Claimant") for return of the seized firearms and ammunition the Government seeks to forfeit. The parties consented to dispositive jurisdiction by the undersigned magistrate judge pursuant to 18 U.S.C. § 636(c) (<u>see</u> court document 5) and waived their right to a jury trial (<u>see</u> court document 18). Based on the stipulations and evidence presented at the trial, the following findings of fact and conclusions of law are entered.

Findings of Fact

1. On April 1, 1994, Robert A. Rudnick was arrested by Birmingham police officers for the misdemeanor offense of parading without a permit. Rudnick was participating in an anti-abortion protest and was arrested with as many as eighty-four other



protesters. He had traveled on a bus from Minnesota to Birmingham with other protesters to participate in the demonstration.

2. During the booking process, Rudnick gave the police officers his correct home address and telephone number in Lexington, Minnesota. He also identified his employer, place of employment, and business telephone number. (See Government's Exhibit 1).

3. Rudnick and the other arrested protesters were released on recognizance bonds. Rudnick's bond specifically notified him that the date for his initial appearance in court was set for April 7, 1994, at 1:30 p.m. (See Government's Exhibit 1).

4. Leaders of the local anti-abortion protest group informed Rudnick and others that attorney Doug Scofield would be retained to represent them on the pending charge, although Claimant never met or talked with Scofield. The docket sheet maintained by the Traffic Division of the Municipal Court of the City of Birmingham does not reflect any attorney for Claimant on the pending charge. (See Government's Exhibit 1).

5. After being released, Rudnick and the other protesters returned to their homes in Minnesota. At some later time not revealed by the evidence, Rudnick moved to Bend, Oregon.

6. Rudnick did not appear in court on the date set for the first appearance, and the case was continued to June 24, 1994. It subsequently was continued to July 29, 1994, then August 31, 1994,

and finally to October 21, 1994. When Rudnick failed to appear on October 21, 1994, an alias warrant was issued for his arrest.

7. At some time not revealed by the evidence, Rudnick was informed by leaders of the local anti-abortion group that the charges against those arrested on April 1, 1994, had been dismissed, although there is no evidence that Rudnick was informed specifically that the charge against *him* was dismissed. Rudnick did not attempt to confirm this with either Attorney Scofield or the Birmingham Municipal Court. In fact, the charge against Claimant had not been dismissed and the alias arrest warrant remained outstanding.

8. Although Rudnick may have driven through Alabama between 1994 and 2001 as an over-the-road truck driver, he never returned to Alabama for the specific purpose either of participating in another abortion protest or responding to the charge against him, until 2001.

9. Between 1994 and 2001, there were several instances in which background checks or criminal history checks were run on the Claimant which failed to turn up the warrant issued in Birmingham. On several occasions he purchased firearms from licensed firearms dealers, in connection with which criminal background checks were obtained, none of which revealed the outstanding warrant. Additionally, Rudnick obtained two licenses from the State of Oregon, a license to carry a concealed weapon and a license to work

as an armed security guard, which required criminal history checks but which failed to reveal the outstanding warrant. Rudnick also was arrested during abortion protests in other jurisdictions, during none of which did the existence of the outstanding warrant come to light.

     10.   In early 2001, Rudnick was stopped by police in Pensacola, Florida, while driving an abortion-protest truck. A search of the truck revealed the five firearms and ammunition that are the subject of this action. Agents of the Bureau of Alcohol, Tobacco, and Firearms conducted the search, found the weapons, returned them to Rudnick, and allowed him to leave. There is no evidence that the outstanding warrant from 1994 was discovered by the agents involved in the stop.

     11.   On March 7, 2001, Rudnick returned to Birmingham to participate in another abortion protest; he was driving the abortion-protest truck in which he had been stopped in Pensacola. When approached by Birmingham police, Claimant admitted that he was driving the truck and that there were unloaded and secured firearms in it. He was arrested on the warrant that had been pending since 1994 and released after posting a $200 cash bond. Ultimately, the original charge on which the warrant was issued in 1994 was dismissed.

## Conclusions of Law

The Government seeks forfeiture of the five firearms and ammunition seized from Claimant on March 7, 2001, on the basis that, at the time he possessed the firearms, he was a fugitive from justice, a violation of 18 U.S.C. § 922(g)(2). Firearms used in violation of federal law are subject to forfeiture under 18 U.S.C. § 924(d), which provides in relevant part:

> Any firearm or ammunition involved in or used in any knowing violation of subsection... (g),... of section 922,..., shall be subject to seizure and forfeiture, and all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter: *Provided*, That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

The Government commenced this action for forfeiture on June 27, 2001. To obtain forfeiture, the Government must first show there is probable cause to believe the firearms are forfeitable. The burden of proof then shifts to the claimant to establish by a preponderance of the evidence some basis for concluding that they are not subject to forfeiture. See <u>Nnadi v. Richter</u>, 976 F.2d 682

(11th Cir. 1992); <u>United States v. Twelve Firearms</u>, 16 F.Supp. 2d 738 (S.D.Tex. 1998)("For forfeiture actions, such as this one, that must follow the forfeiture procedures provided under the customs laws, see 18 U.S.C. § 924(d), once the government shows probable cause for the forfeiture, the burden of proof rests with the claimant to show that forfeiture is not warranted."); <u>United States v. Eight Firearms</u>, 881 F.Supp. 1074 (S.D.W.Va. 1995); <u>United States v. Twenty-Six Firearms</u>, 485 F.Supp. 549 (D.C.Pa. 1980)("In a forfeiture proceeding, once the libellant has shown probable cause, the burden of proof shifts to the claimants."); <u>but see</u> <u>United States v. 47 mm Cannon</u>, 95 F.Supp. 2d 545 (E.D.Va. 2000)("The Government would have this Court apply a 'probable cause' standard under § 924.  A 'probable cause' standard is used in Title 21 U.S.C. Section 881 and 18 U.S.C. 981 forfeiture proceedings.... However, a search of the caselaw reveals that the vast majority of reported cases apply the 'preponderance of the evidence' standard in § 924 forfeiture proceedings.").

The first step requires the Government to establish that the firearms are subject to forfeiture as having been "involved in" a violation of 18 U.S.C. § 922(g)(2).  To do so, it must establish that the Claimant was a "fugitive" at the time the firearms were possessed by him and seized on March 7, 2001.  There is no dispute that Rudnick was in possession of the firearms or that he had been charged with the traffic infraction of parading without a permit in

6

1994. It is further undisputed that a warrant was issued for his arrest in 1994 when he failed to appear in court on the charge, although Rudnick denies that he was aware of it until his arrest in 2001. The dispute centers on whether, to be a "fugitive" for purposes of a violation of § 922(g)(2), Rudnick had to know that a warrant had been issued for his arrest or that he otherwise intended to avoid prosecution on the charge.

As used in § 922(g)(2), the term "fugitive from justice" is defined at § 921(a)(15), as follows:

> The term "fugitive from justice" means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding.

While the statute does not use words like "wilfully" or "intentionally," implicit in the definition is the volitional decision of the person to *flee* a state "to avoid prosecution." Clearly, the reason the person has for leaving the state is key to whether he is a fugitive. To be so, he must leave the state with the motivation "to avoid prosecution." Absent that motivation or intention, merely leaving the state does not make a person a fugitive.

The Eleventh Circuit as said the same thing. In <u>United States v. Gonzalez</u>, 122 F.3d 1383 (11th Cir. 1997), the court addressed whether the Government had presented sufficient evidence to support a charge under § 922(g)(2) when there was no evidence that the

7

defendant had ever been in the state of prosecution, much less had fled from it to avoid prosecution. The court wrote:

> The term "fugitive from justice" is defined in 18 U.S.C. § 921(a)(15) as "any person who has fled from any state to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." Gonzalez argues that, although he was indicted in Puerto Rico on federal drug charges, the government produced no evidence that he fled to the State of Florida. He contends that, because he need not have been physically present in Puerto Rico to have committed the alleged crimes, the indictment alone cannot support a finding that he was ever outside of Florida.
>
> The government responds that "Gonzalez's argument misses the mark because the relevant inquiry is whether Gonzalez purposely stayed away from Puerto Rico to avoid the charges pending against him." For support, the government cites United States v. Fonseca-Machado, 53 F.3d 1242, 1243-44 (11th Cir. 1995), in which we stated that "[m]ere absence from the jurisdiction in which a crime occurred does not render the suspect a fugitive from justice; he must be found to have absented himself from the jurisdiction with the intent to avoid prosecution."
>
> Here, the evidence was insufficient to allow a reasonable jury to conclude that Gonzalez was ever in Puerto Rico, much less that he intentionally absented himself--that is, took himself away--from Puerto Rico to avoid prosecution there. In fact, the government was unable to produce evidence that Gonzalez had ever been in Puerto Rico or, for that matter, had been outside of Florida during the pertinent time. Gonzalez, therefore, does not meet the statutory definition of "fugitive"; his conviction under 18 U.S.C. § 922(g)(2) is reversed.

Id., at 1386-7. Plainly, the court of appeals concluded that, to meet the statutory definition of "fugitive," the person must *intend* to avoid prosecution and take active steps to do so by fleeing the jurisdiction in which the charge is pending. The court's reliance

8

on <u>United States v. Fonseca-Machado</u>, 53 F.3d 1242 (11th Cir. 1995), makes clear that merely leaving a state in which there is a pending charge is not enough; the essence of "fugitive" status is the subjective intent of the person "to avoid prosecution."

In this case, there is no dispute that Rudnick was in Alabama in 1994 when arrested for parading without a permit. Further, there is no dispute that he left Alabama and did not return before 2001. The court is not convinced, however, that Rudnick "fled" Alabama to avoid prosecution on the charge of parading without a permit. He, like a busload of other protesters, left Alabama to return to his home after the protests were over. In doing so, he left Alabama authorities with his full name, correct address, telephone number, employer's name, employer's telephone number, driver's licence number, and other identifiers, which strongly suggests that he was not intending to flee or abscond to avoid prosecution. Further, Rudnick has been arrested numerous times in connection with his abortion protests over the years, and he has not fled from or avoided the prosecutions resulting from those arrests. The court is persuaded that, at the time he left Alabama in 1994, he was not fleeing with the intent "to avoid prosecution" and, consequently, was not a fugitive.

To the extent there is case law in other circuits holding that a person can be a "fugitive" by intentionally staying away from the state in which the prosecution is pending, <u>see, e.g.</u>, <u>United States</u>

9

v. Spillane, 913 F.2d 1079 (4th Cir. 1990), the court also is persuaded that Rudnick did not stay away from Alabama with the intention of avoiding prosecution. Although it is true that he never contacted the attorney he was told would be retained for him and he never contacted the Birmingham Municipal Court to inquire about the status of the pending case, there is strong evidence that he believed the charge had been dismissed and that there was nothing pending. First, he was told by fellow protesters that the charges against those arrested in April 1, 1994, had been dismissed. Second, he was never contacted by the Birmingham court or any police authorities about the case or his failure to appear on it. Third, his belief that the charge had been dismissed was further reinforced by several instances in which he would have expected the pending charge to come to light, but it did not. He purchased firearms subject to criminal records checks, he was arrested at other anti-abortion protests, he sought and obtained two licenses that required criminal history checks, none of which revealed the pending charge. Finally, he was searched by *federal ATF agents* in Pensacola, Florida, in early 2001, who also failed to find the outstanding Birmingham warrant or pending charge. Regardless of whether these instances were simply failures in the system that reports the existence of warrants, they gave Rudnick a reasonable basis for believing what he had already been told, that the 1994 charge no longer existed. There simply is no evidence,

therefore, that he stayed away from Alabama with the subjective intent of avoiding prosecution on the charge.

Absent some volitional decision by Rudnick either to leave Alabama or stay away from Alabama *to avoid prosecution*, he does not meet the statutory definition of being a "fugitive." Because he did not constitute a "fugitive" for purposes of § 922(g)(2), his possession of the firearms on March 7, 2001, was not a violation of federal law. Without a violation of federal law, the firearms are not subject to forfeiture.

A separate order will be entered denying the Government's prayer for forfeiture and directing the Government to return the firearms and ammunition to the Claimant.

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this the ___3rd___ day of December, 2003.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE